# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| CHARLEY MILLHOFF, | ) | CASE NO. 5:20-CV-00507 |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Charley M. Millhoff (Plaintiff), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (Commissioner), denying an application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

I.      **Procedural History**

Plaintiff applied for SSI on February 9, 2017, alleging a disability onset date of January 18, 2017. (R. 11, Transcript (Tr.) 146). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 84, 92, 97). Plaintiff participated in the hearing on November 27, 2018, was represented by counsel, and testified. (Tr. 31-49). A vocational expert (VE) also participated and testified. *Id.* On January 3, 2019, the ALJ found Plaintiff not disabled. (Tr. 12). The Appeals Council denied Plaintiff's request to review the ALJ's decision on January 21, 2020, and the ALJ's decision became the Commissioner's final decision. (Tr. 1). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1).

The parties have completed briefing in this case. (R. 12, 13, 14). Plaintiff asserts that the ALJ's residual functional capacity finding lacked substantial evidence because, as Plaintiff further contends, the ALJ made conflicting findings regarding the medical opinions of State agency medical consultants Dr. Hinzman and Dr. Bolz. (R. 12, PageID#2202).

II.     **Evidence**
     A.      **Relevant Medical Evidence**[1]
          1.      **Treatment Records**

Plaintiff has a history of medical treatment on her right ring finger, which began in 2015, before her disability onset date. In July 2015, Plaintiff was treated in the emergency room for pain in her "right 5th finger," right hand, and right wrist/forearm. (Tr. 681). The provider's impression

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

2

was contusion/sprain to the right 5th finger (Tr. 684), and she was treated with a finger splint (Tr. 683). In November 2015, Plaintiff was again treated at the emergency room for right hand pain and right ring finger stiffness. (Tr. 641-42). The provider's impression was subacute right fourth finger pain, suspicion for trigger finger, and she was treated with a finger splint. (Tr. 643, 646). In December 2015, Dr. Sivaram Kollengode gave Plaintiff a Cortisone injection for pain in her right ring finger. (Tr. 510-11).

In February 2016, Dr. Robert Huff examined Plaintiff for right ring finger pain. (Tr. 700). Dr. Huff assessed trigger finger, right ring finger and referred Plaintiff for surgical consultation. (Tr. 701).

Dr. Corey Jackson performed a trigger finger release surgery on Plaintiff's right ring finger on March 18, 2016. (Tr. 362). During a follow up appointment on March 31, 2016, Plaintiff's incision was healing well, there was no sign of infection, she could fully extend her fingers and make a fist. (Tr. 364). On April 27, 2016, Plaintiff reported to Dr. Jackson that she was improved overall but still had some locking with certain movements. (Tr. 368). Plaintiff could make a full fist but had some issues with full motion and continued pain. (*Id.*). Dr. Jackson suggested physical therapy but noted that Plaintiff "does not desire to complete." (*Id.*). The doctor encouraged Plaintiff to work on full motion and stretching. (*Id.*).

Plaintiff had a 12-week post surgical follow up with Physician Assistant Kristi Jackson on May 27, 2016 and reported that she continued to have pain. (Tr. 370). P.A. Jackson noted that Plaintiff's incision was well-healed, her sensation was preserved, she could make a fist and fully extend her fingers, but she still had pain. (*Id.*). P.A. Jackson recommended an MRI and Plaintiff declined a referral to a hand specialist. (*Id.*).

Plaintiff underwent an MRI on June 10, 2016, which revealed "edema deep to the flexor digitorum at the level of the fourth proximal phalanx with questionable irregularity at the ulnar aspect of the A2 pulley which may be postsurgical or related to partial tearing" and "[t]enosynovitis involving the fourth flexor digitorum profundus and superficialis at the level of the metacarpal." (Tr. 309). On June 22, 2016, Dr. Jackson reviewed Plaintiff's MRI results and opined that the questionable partial tearing of the A2 pulley and edema under the flexor tendon was likely postsurgical and that she expected it to improve, with no need for further surgical intervention. (Tr. 373). Dr. Jackson noted that Plaintiff's incision was healed, she could make a fist, sensation was preserved, and she had full grip strength. (*Id.*). Dr. Jackson suggested physical therapy which Plaintiff declined. (*Id.*).

Plaintiff saw Dr. Jackson on January 19, 2017, for follow up trigger finger release right ring finger. (Tr. 375). Plaintiff reported continued pain in her right ring finger and advised that she stopped doing the hand exercises due to pain and swelling. (*Id.*). Dr. Jackson observed a well-healed incision, apparent full range of motion, sensation preserved, some scarring with no evidence of infection, but noted tenderness at the base of the ring finger on the palmer aspect as well as the incision site. (*Id.*). Dr. Jackson assessed right hand pain and referred Plaintiff "for a second opinion with a hand specialist to see if any further intervention is necessary." (*Id.*). There is no indication Plaintiff pursued this referral.

Plaintiff treated with neurologist Dr. Ahmed Itrat from August 2016 to February 2018.[2] (Tr. 529-555, 595-607). Upon evaluation, Dr. Itrat noted that Plaintiff had fully intact strength, sensation, and motor tone in her upper extremities. (Tr. 544-45, 597, 603).

---

[2] Plaintiff treated with Dr. Itrat primarily concerning seizures and headaches, medical conditions that are not at issue herein.

4

**2.     Medical Opinions Concerning Plaintiff's Functional Limitations**

On March 20, 2017, State Agency medical consultant Dr. Gary Hinzman opined that Plaintiff has the ability to: occasionally lift/carry 20 pounds, frequently lift/carry ten pounds; stand/walk about six hours in an eight hour workday; sit about six hours in an eight hour workday; unlimited push/pull; unlimited climbing ramps/stairs, balancing, stooping, kneeling, crouching; never climbing ladders/ropes/scaffolds; occasionally crawling; unlimited reaching any direction and feeling; limited handling and fingering in her right hand; and "[l]imited to occasional fine and gross manipulation RUE [right upper extremity]"; no visual, communicative, environmental limitations; and should avoid all exposure to hazards and commercial driving. (Tr. 61-63). Dr. Hinzman noted that Plaintiff's postural, manipulative, and environmental limitations were due to, in part, her right trigger finger diagnoses and surgery. (*Id.*). On June 30, 2017, State Agency medical consultant Dr. William Bolz concurred with Dr. Hinzman's opinion. (Tr. 77-79).

On August 24, 2018, Dr. Itrat, Plaintiff's treating neurologist, completed a Physical Capacity Evaluation form indicating that he treated Ms. Millhoff two to three times per year and last saw her on July 17, 2018. (Tr. 866-867). The doctor opined that Plaintiff could presently perform "light clerical work, such as alphabetizing, data entry, filing, copying, folding, faxing and etc."; she was not significantly limited in the ability to ask simple questions, accept and respond appropriately to instructions from supervisors, and to carry out short and simple instructions; she could occasionally bend, squat, twist/rotate, and reach over her shoulders; she could stand and walk for one hour in an eight hour workday; she could sit for four to six hours in an eight hour workday, lift 15 pounds, and she could frequently use her hands. (*Id.*). The doctor noted "Pt is on medication for migraine and seizures, however many medications are currently discontinued due to pt's pregnancy" and further opined that Plaintiff could return to work within two months,

5

possibly by October 1, 2018. (Tr. 867).

    **B.**    **Relevant Hearing Testimony**

At the November 27, 2018 hearing, Plaintiff testified as follows:

- She attended school through seventh grade and did not obtain a GED. (Tr. 35). She is right-handed. (Tr. 36).

- She had surgery on her right hand, but she wants to follow up with someone because it still bothers her. Due to her hand problems, she tends to drop things. (Tr. 43).

- She previously worked at a motel, cleaning rooms. However, she always cleaned with another employee. (Tr. 41).

During the administrative hearing, the ALJ posed the following hypothetical question to the VE:

> [C]onsider an individual that can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. This individual can sit for six hours, stand and/or walk for six hours in a normal workday. This individual cannot climb ladders, ropes, or scaffolds, and can occasionally climb ramps and stairs. This person can frequently balance, and can occasionally kneel, and occasionally crawl. This individual can frequently handle and finger with the right upper extremity. This individual must avoid workplace hazards such as unprotected heights or exposure to dangerous moving machinery. This individual cannot perform any commercial driving. This individual is further limited to only simple routine tasks that do not involve arbitration, negotiation, or confrontation. This individual cannot direct the work of others, and cannot be responsible for the safety or welfare of others. This individual cannot perform piece rate work or assembly line work. And this individual would be limited to occasional interaction with others.

(Tr. 45-46). The VE testified that such an individual could perform the duties of housekeeping cleaner "with approximately 300,000 of those jobs in the national economy," inspector with "approximately 100,000 of those jobs in the national economy," and packager with "approximately 60,000 of those jobs in the national economy." (Tr. 46). Thereafter, the ALJ considered another limitation that the hypothetical individual would be off task thirty-three

6

percent of the day on an ongoing basis, and the VE testified that there would be no jobs for such an individual. (*Id.*). Finally, the VE testified that there would be no jobs available to the described individual with the added limitation that the individual would be absent from work one day a week on an ongoing basis. (Tr. 47).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the

claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled under the Act. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since January 18, 2017, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: migraines, seizure disorder, major depression, generalized anxiety disorder, and borderline intellectual functioning (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she cannot climb ladders, ropes or scaffolds. She can frequently balance and occasionally kneel and crawl. She can frequently handle and finger with the right upper extremity. She must avoid workplace hazards such as unprotected heights or exposure to dangerous moving machinery. She cannot engage in commercial driving. She is limited to simple, routine tasks that do not involve arbitration, negotiation or confrontation. She cannot direct the work of others or be responsible for the safety or welfare of others. She cannot engage in piece rate work or assembly line work. She can occasionally interact with others.

5. The claimant has no past relevant work (20 CFR 416.965).

    6.      The claimant was born on ***, 1986 and was 30 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

    7.      The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

    8.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

    9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

    10.     The claimant has not been under a disability, as defined in the Social Security Act, since January 18, 2017, the date the application was filed (20 CFR 416.920(g)).

(Tr. 17-25).

**V.    Law and Analysis**

    **A.    Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id*.) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ

failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

In her sole assignment of error, Plaintiff asserts that ALJ's assessed residual functional capacity (RFC), set forth *supra* in section. IV.4, is not supported by substantial evidence because the ALJ made conflicting findings regarding the medical opinions of the State Agency medical consultants. (R. 12, PageID# 2202). The RFC is an indication of an individual's work-related abilities despite their limitations. *See* 20 C.F.R. § 404.1545(a).[3] The ALJ bears the responsibility for assessing a claimant's RFC, based on the relevant evidence. *See* 20 C.F.R. § 404.1546(c).

Specifically, Plaintiff contends that the ALJ erred by limiting her to frequently handle and finger with the right upper extremity rather than adopting an occasional fine and gross manipulation with her right-hand limitation as set forth by the State Agency consultants Drs. Hinzman and Bolz. (R 12, PageID# 2203). The Commissioner contends that substantial evidence supports the ALJ's determination that Plaintiff could frequently handle and finger with her right

---

[3] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, the claimant's RFC, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (quoting *Johnson v. Comm'r of Soc. Sec.*, 535 Fed. App'x. 498, 505 (6th Cir. 2013) (internal citations omitted)).

upper extremity. (R. 13, PageID# 2220).

"The issue of RFC is reserved to the Commissioner; while the assessment of RFC must be based on evidence in the record, 'the final responsibility for deciding these issues is reserved to the Commissioner.'" *Conway v. Berryhill*, Case No. 1:18-cv-00218, 2018 U.S. Dist. LEXIS 220999, at *19 (N.D. Ohio Dec. 17, 2018) (quoting *Lambert-Newsome v. Astrue*, No.11-cv-1141, 2012 U.S. Dist. LEXIS 98649, 2012 WL 2922717, at *6 (S.D. Ill. July 17, 2012). The ALJ set forth five pages considering Plaintiff's medical records and the various medical opinions. (Tr. 19-23). Regarding her right-hand abilities, the ALJ not only considered the assessment from non-examining sources, Dr. Hinzman and Dr. Bolz, but also the opinions from Plaintiff's treating physician, Dr. Itrat, when concluding that Plaintiff could "frequently handle and finger with the right upper extremity." (Tr. 19, 22-23).

> Here, the ALJ discussed the State Agency consultants reports as follows:
>
> On March 20, 2017, State Agency consultant Gary Hinzman, M.D., reviewed the claimant's medical record and opined that the claimant was limited to the light exertional level. He said the claimant could never climb ladders, ropes or scaffolds. He said she could occasionally crawl. He said she was limited to occasional fine and gross manipulation with the right upper extremity. He said she should avoid all exposure to unprotected heights, hazardous machinery, and commercial driving (IA). On June 30, 2017, State Agency consultant William Bolz, M.D., reviewed the updated medical record and agreed with the opinion of Dr. Hinzman (4A). The State Agency medical consultant's opinions are given great weight. While the record does not indicate a degenerative disc or joint disease limiting the claimant to the light exertional level, the claimant's ongoing complaints of a seizure disorder and migraines would limit her ability to perform exertional work. Further, with seizure activity and a history of a right trigger finger (SF) the claimant was given postural and manipulation limitations, as well as limitations regarding hazards. These are well supported by the record and the entire opinion is given great weight.

(Tr. 22). Plaintiff argues that the ALJ erred by not adopting Dr. Hinzman and Dr. Bolz's limitations of Plaintiff's fine and gross manipulation with the right upper extremity to

11

occasional, despite assigning great weigh to their opinion. (R. 12, PageID# 2204).

While Plaintiff points to the consultants' opinions to support the belief that greater manipulation limitations should have been included in the RFC, a decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512. Substantial evidence supports the ALJ's determination, which also relied upon the opinions from her treating provider Dr. Itrat. The ALJ continued:

> On August 22, 2018, A. Itrat, M.D., opined that the claimant could participate in light clerical work. He stated that she was moderately limited in her ability to perform activities within a schedule, maintain regular attendance or to be punctual. He stated that she could occasionally bend, squat, twist and rotate and occasionally reach over the shoulder. He said she could frequently use her hands. He said the claimant could stand for one hour, walk for one hour, and sit for up to six hours in an eight-hour workday. He is an acceptable medical source who treated the claimant and his opinion is consistent with her treatment records regarding migraines and seizure activity, including her ability to attend many treatment visits despite her allegations regarding the frequency of migraines.

(Tr. 23). Dr. Itrat's opinion, authored the day before Plaintiff's alleged disability on-set date, indicated that he treated Ms. Millhoff two to three times per year and last saw her on July 17, 2018. (Tr. 866-867). The doctor opined that Plaintiff could perform "light clerical work, such as alphabetizing, data entry, filing, copying, folding, faxing and etc." Further pertinent to the single issue raised by plaintiff, she could frequently use her hands. *Id*.

Plaintiff's filings do not address Dr. Itrat's opinions or the ALJ's reliance upon them in forming the RFC. As such, it does not refute the substantial evidence supporting the ALJ's RFC.

In addition, an ALJ is not required to discuss every piece of evidence in the record to support her decision but must explain why she did not include the limitations from an opinion of a medical source in her determination of the claimant's RFC. *See, e.g., Moscorelli v. Colvin*, No. 1:15CV1509, 2016 WL 4486851, at *3 (N.D. Ohio Aug. 26, 2016) (*citing Thacker v.*

*Commissioner*, 99 Fed. Appx. 661, 665 (6th Cir. 2004); *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011)). SSR 96-8p provides that "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Moscorelli*, 2016 WL 4486851, at *3 (quoting SSR 96-8p, 1996 WL 374184, at *7); *see also Stubbs v. Berryhill*, No. 1:17CV2498, 2018 WL 5255140, at *14 (N.D. Ohio Oct. 22, 2018) (same).

The fact that the ALJ assigned "great weight" to Dr. Hinzman and Dr. Bolz' opinions does not require the ALJ to adopt all the stated limitations. *Conway*, 2018 U.S. Dist. LEXIS 220999, at *19. Although the ALJ determined that Plaintiff could frequently, rather than occasionally handle and finger with the right upper extremity, while also assigning Dr. Hinzman and Dr. Bolz's opinions great weight, that does not lead to a conclusion that the RFC was not supported by substantial evidence. *Id.,* citing, *Reeves v. Comm'r of Soc. Sec.*, 618 Fed. App'x 267, 275 (6th Cir. 2015); *Moore v. Comm'r of Soc. Sec.*, No. 1:13-CV-00395, 2013 U.S. Dist. LEXIS 170937, 2013 WL 6283681, at *7 (N.D. Ohio Dec. 4, 2013) (White, M.J.); *Lambert-Newsome*, 2012 WL 2922717, at *6.

The ALJ explained that the RFC adopted the limitation set forth by Plaintiff's treating provider. Plaintiff does not challenge that conclusion as error. Although the ALJ did not expressly state the the RFC adopted the treating provider's fingering and handling limitation over the stricter limitations opined by the non-examining State Agency physicians, such conclusion is apparent when reading the decision as a whole. Even if the ALJ's explanation could have been more thorough, the Sixth Circuit has held that a matter should not be remanded where the plaintiff cannot establish that "a ruling was anything but harmless error," noting the futility of "sending the case back to the ALJ" where it would not "serve any useful purpose ...."

13

*Kobetic v. Comm'r of Soc. Sec.*, 114 Fed. App'x 171, 173 (6th Cir. 2004) ("When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'") (*quoting NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (same). "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989); *accord Mabrey v. Comm'r of Soc. Sec.*, 1:13-cv-555, 2015 WL 556435 at *5 (S.D. Ohio Feb. 10, 2015),*adopted by* 2015 WL 1412205 (Mar. 26, 2015).

Further, for this court to re-weigh the weight assigned to these opinions or to find one more supported than the other would invite error because this court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard*, 889 F.2d at 681. Accordingly, the RFC was supported by substantial evidence, and Plaintiff's sole assignment of error lacks merit.

VI.  **Conclusion**

For the foregoing reasons, it is recommended that the Commissioner's final decision be affirmed.

s/ *David A. Ruiz*<br>
David A. Ruiz<br>
United States Magistrate Judge

Date: August 4, 2021

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the district court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019); *See also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).